# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| DR. KAROLINA MARCINIAK-DOMINGUES GONCALVES AGRA and MR. PEDRO MARCINIAK-DOMINGUES GONCALVES AGRA, | ) ) ) ) |
| Plaintiffs, | ) Case No. 1:23-cv-10305-JPC ) |
| v. | ) ) |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, *et al.*, | ) ) ) |
| Defendants. | ) ) |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS THE COMPLAINT

Olivia M. Clancy, Esq.
SHEGERIAN & ASSOCIATES
90 Broad Street, Ste 804
New York, New York 10004
Telephone: (212) 257-8883
Email: oclancy@shegerianlaw.com

*Counsel for Plaintiffs Dr. Karolina Marciniak-Domingues Goncalves Agra and Mr. Pedro Marciniak-Domingues Goncalves Agra*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 4

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 4

ARGUMENT ........................................................................................................................... 7

I.      THE DOCTRINE OF CLAIM SPLITTING DOES NOT APPLY………………………7

II.     THIS COURT HAS PERSONAL JURISDICTION OVER MIT UNDR 12(B)(2)……....8

III.    VENUE IS PROPER IN NEW YORK UNDER 12(B)(3)………………………………..13

IV.    THE COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST MIT FOR DISCRIMINATION BASED ON GENDER AND SEXUAL HARASSMENT (COUNTS ONE TO THREE) ........................................................................................ 14

V.     THE COMPLAINT SUFFICIENTLY STATES A RETALIAITON CLAIM AGAINST MIT (COUNTS FOUR TO SIX) ...................................................................................... 17

VI.    THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT UNDER THE NEW YORK ADULT SURVIVORS ACT........................................................... 17

VII.   THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................................... 18

VIII.  PLAINTIFFS' LOSS OF CONSORTIUM CLAIM IS WITHDRAWN…………………19

IX.    ALTERNATIVELY, PLAINTIFFS REQUEST THE COURT STAY THE ACTION PENDING THE OUTCOME OF MARCINIAK I……………………………………….20

CONCLUSION ...................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                         **Page(s)**

*Azzolini v. Alitalia Airline,*
   1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2
   (S.D.N.Y. Nov. 13, 1991)..............................................................................................................15

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines,*
   828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011)…………………………………….…………..9

*Burnham v. Board of Edu.,*
   1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2*
   (S.D.N.Y. June 11, 1997)…………………………………………………………….………14

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA,*
   30 F. Supp. 2d 295, 305 (S.D.N.Y. 2009)…………………………………………...19

*Cohn v. New York City Dep't of Parks,*
   1996 WL 449539……………………………………………………………………….15

*Computer Assoc. Int'l, Inc. v. Altai, Inc.,*
   893 F.2d 26, 29 (2d Cir. 1990)………………………………………………………19

*Daimler AG v. Bauman,*
   571 U.S. 117……………………………………………………………………….……..11

*Dorchester Fin. Sec., Inc. v. Banco BRJ, SA.,*
   722 F.3d 81, 85 (2d Cir. 2013)………………………………………………………….9

*EEOC v. Port Auth. of N.Y. & N.J.,*
   768 F.3d 247, 254 (2d Cir. 2014)…………………………………………………16

*Gehling v. St. George's Sch. of Med., Ltd.,*
   773 F.2d 539, 542 (3d Cir. 1985)……………………………………………………….9

*Gonzalez v. City of New York,*
   2015 WL 9450599, at *3 (E.D.N.Y. Dec. 22, 2015)………………………………….14

*Gucci Am. v. Bank of China,*
   68 F.3d 122, 134 (2d Cir. 2014)……………………………………………………….9

*Gulf Ins. Co. v. Glasbrenner,*
   417 F.3d 353……………………………………………………………………………13

*Harris v. New York City Department of Homeless Services,*
   1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9
   (S.D.N.Y. Apr. 28, 1998)………………………………………………………...14

*Jason v. Krey,*
   60 A.D.3S 735, 875 N.Y.S.2d 194, 195 (2009)…………………………………………19

*Johnson v. NYU Langone Health,*
   2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023)………………………………………18

*Kerotest Mfg.Co. v. C-O-Two Fire Equip. Co.,*
   342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952)…19

*Klinkowitz v. Jamaica Hosp. Med. Ctr.,*
   2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022)………………………………………..14

ii

*Kwan v. Andalex Grp., LLC,*
    737 F.3d 834…………………………………………………………………………….18

*New York v. Blank,*
    No. 88-CV-163, 1991 U.S. Dist. LEXIS 14582, 1991 WL 208883, at *11
    (N.D.N.Y. Oct. 10, 1991)………………………………………………………………….20

*Ochoa v. New York City Dep't of Educ.,*
    2021 WL 5450343, at *3 (S.D.N.Y. Nov. 22, 2021)……………………………………16,17

*Thackurdeen v. Duke Univ.,*
    130 F. Supp. 3d 792………………………………………………………………...8,9,11

*Toledo v. Unibud Restoration Corp.,*
    2022 WL 171198, at *1 (S.D.N.Y. Jan. 19, 2022)…………………………………………15

*Quinn v. Green Tree Credit Corp.,*
    159 F.3d at 766……………………………………………………………………..15

*Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.,*
    702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010)……………………………………………19

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72, 85 (2d Cir. 2015)………………………………………………………16

*Volmar Distribs., Inc. v. N.Y. Post Co.,*
    152 F.R.D. 36, 39 (S.D.N.Y. 1993)…………………………………………………..20

*Yan v. Ziba Mode Inc.,*
    No. 09-CV-3000, 2016 U.S. Dist. LEXIS 42328, 2016 WL 1276456, at *3
    (S.D.N.Y. Mar. 29, 2016)………………………………………………………………16

Plaintiffs Dr. Karolina Marciniak-Domingues Goncalves Agra and Mr. Pedro Marciniak-Domingues Goncalves Agra ("Plaintiffs") oppose Defendant Massachusetts Institute of Technology's ("MIT") motion pursuant to Rules 8 and 12(b) of the Federal Rules of Civil Procedure seeking to dismiss all claims lodged against MIT in the Complaint (Dkt. 1) (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs bring suit against Defendants Rockefeller University ("RU"), Massachusetts Institute of Technology ("MIT"), National Science Foundation - Center For Brains Minds and Machines Cooperative Agreement ("CBMM"), Frederico Azevedo ("Azevedo") and Winrich Friewald ("Freiwald") for intentionally discriminating against Plaintiff Dr. Karolina Marciniak-Domingues Goncalves Agra ("Marciniak") based on her gender, fostering a hostile work environment, sexually harassed her and subjected her to retaliation ultimately resulting in termination, abruptly ceasing her research, causing reputational damage, intentional infliction of emotional distress, loss of consortium and economic damages pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e, *et seq*. ("Title VII"), the New York State Executive Law ("NYSHRL") § 296, *et seq*., the New York City Admin. Code § 8-101, *et seq*. ("NYCHRL") and the New York Adult Survivors Act ("ASA"). For the reasons stated herein, Plaintiffs respectfully request this Court deny in its entirety MIT's motion to dismiss any of Marciniak's brought claims against the Defendant institution.

## FACTUAL AND PROCEDURAL BACKGROUND

CBMM is a multi-institutional research and education center.[1] CBMM at MIT was established in 2013 under a cooperative agreement through funding via National Science

---

[1] CBMM is dedicated to the study of intelligence, how the brain produces intelligent behavior and how this scientific discovery may enable the replication of intelligence in machines.

Foundation ("NSF"). MIT is the *main* awardee, whereas President and Fellows of Harvard College ("Harvard"), Boston's Children's Hospital ("BCH"), Marine Biological Laboratory ("MBL"), University of Chicago ("UChicago") and RU are selected sub-awardee institutions of the NSF-CBMM agreement. Marciniak's claims arose between 2014 and 2022 when she was recruited to, subsequently worked for and trained at the CBMM as a junior postdoctoral researcher ("postdoc"). Compl. ¶ 75.  RU and MIT jointly employed Marciniak from September 2016 to November 2021.[2] Harvard, together with MIT, were employing institutions of Marciniak's sexual assault perpetrator, Azevedo against whom in March 2019 she filed a complaint with MIT regarding the rape in August 2017 at CBMM's summer program.

Freiwald tried to recruit her by "intruding on her personal life without her consent," and "gravely misrepresented to her the state, maturity and capabilities of the laboratory facilities." Id. ¶¶ 37-39, 44. Marciniak also alleges that, under Freiwald's supervision, Freiwald "persistently invaded [her] personal space, touching her lower back inappropriately and looking at her legs and buttocks"; invited her to social events that made her feel "uncomfortable," "unwelcome," and "embarrass[ed]"; and had "demeanor and suggestive facial expressions [that] indicated a request for sexual favors in exchange for project progression." *Id.* ¶¶ 49, 54, 63, 75, 93-94. Further, Marciniak alleges that Freiwald acted improperly when he terminated her after she "expressed the need to set boundaries . . . [and] allud[ed] to Freiwald's past inappropriate actions as the reason for her discomfort," and filed a complaint against Freiwald and RU. *Id.* ¶¶ 96-98, 104-05. Marciniak alleged Freiwald as her direct supervisor assigned Plaintiff a CBMM project expressing excitement about the potential fit and the opportunity to work closely with a professor at MIT and alleged Freiwald had already contacted the professor at MIT about the offer. *Id.* ¶¶ 38,39. Further, she alleged Freiwald delegated her to travel to MIT to establish CBMM collaboration in September 2016. *Id.* ¶ 44. In August 2017,

---

[2] MIT maintained control over her employment, accessed her work progress and oversaw her research. Compl. ¶¶ 10, 26, 28.

Plaintiff attended a CBMM course in Woods Hole, Massachusetts where she was assigned to reside in an off-campus cottage shared with Azevedo, where he sexually assaulted her. He later mocked Plaintiff's emotions and coerced her silence by cornering her and insisting on her secrecy. *Id*. ¶¶ 47, 48, 51-53, 70, 87.[4] In September 2017, he "harassed [her] through daily calls and text messages" and "intimidated [her] to stay silent about the sexual assault incident," *id.* ¶¶ 51-52; between November 2017 and January 2018, he "coerced [her] into participating in three-some sexual encounters," *id.* ¶ 53; in March 2018, he "forcefully pushed [her] onto the bed, engaging in non-consensual intercourse without a condom," *id.* ¶ 56; in May and June 2018, he initiated unwanted conversations with her in Massachusetts and "added her to his self-made Whatsapp group of event organizers . . . [wherein] he repeatedly used Neo-Nazi and White Supremacist terms . . . [and] made derogatory comments about her Polish background," *id.* ¶¶ 58-60;[5] and in May 2019, he "harass[ed] and intimidat[ed]" her "through his physical gestures, voice and looks" during a conference in Massachusetts, *id.* ¶¶ 70-71.

In May and September of 2019, Marciniak filed the complaint about institutional processing of her initial complaint with the NSF Office of Diversity and Inclusion. On August 10, 2020, Marciniak filed a retaliation complaint with EEOC Boston against MIT, Harvard and BCH in relation to the events from February 2020 after denial of a Teaching Assistant ("TA") position by CBMM's summer program Directors. In May 2020, Marciniak opposed the ongoing sexual harassment from Freiwald, and on June 4, 2020, he demoted her in retaliation resulting in deportation. In May 2021, she filed a sexual harassment and retaliation complaint with the New York State Division of Human Rights ("NYSDHR") against Freiwald and RU. In August 2021, Marciniak was terminated effective November 2021. In January 2022, the NYSDHR issued a probable cause determination. On June 7, 2022, Marciniak filed a Charge of Discrimination with the EEOC receiving a right to sue. *Id*. ¶6. On December 22, 2022, Plaintiffs commenced a

lawsuit referenced herein as *Marciniak I*[3] against MIT, Harvard, RU and four other defendants: BCH, MBL, UChicago and NSF. In response to Defendants' pre-motion letters seeking to dismiss Plaintiffs' *Marciniak I* claims (*Marciniak I* Dkts. 15, 22, 24, 27, 32), Plaintiffs filed the Amended Complaint on April 10, 2023.[4] On April 20, 2023, Defendants filed a joint status report advising the court that they would move to dismiss. *Marciniak I* Dkt. 66. The court set a briefing schedule for Defendants' motions on November 6, 2023. *Marciniak I* Dkt. 68. Plaintiffs' counsel entered an appearance in *Marciniak I* on November 8, 2023. *Marciniak I* Dkt. 69. On November 22, 2023, Plaintiffs filed the instant action and MIT filed its motion to dismiss. Plaintiffs herein oppose Defendant MIT's arguments seeking dismissal of any of the claims.

## ARGUMENT

## I.     THE DOCTRINE OF CLAIM SPLITTING DOES NOT APPLY

The doctrine of claim splitting does not apply as *Marciniak I* filed before the instant action of *Marciniak II* has not generated a final judgment or resolution and is in early stages of litigation as the parties await a decision on defendants' Motions to Dismiss. Under the doctrine of claim splitting, "a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing, *inter alia, Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)); *see also Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-cv-5966, 2017 U.S. Dist. LEXIS 207932, 2017 WL 6507110, at *5 (S.D.N.Y. Dec. 18, 2017) ("Claim-splitting is generally prohibited by the doctrine of res judicata, which bars parties to a prior action or those in privity with them from raising in a subsequent proceeding any claim that they *could* have raised in the prior one, where all of the claims arise from the same set of operative facts." (internal citation and quotation marks omitted) (emphasis in original)). "To

---

[3] The lawsuit initially filed by Plaintiffs *pro se* was assigned Civil Case No. 1:22-cv-10959-ALC-SN currently before the Hon. Andrew L. Carter, Jr.

[4] *Marciniak I* Dkt. 75.

decide if a later-filed suit is duplicative, courts examine whether the two proceedings involve the same (1) parties or their privies and (2) transactions or series of transactions." *Tesla Wall Sys.*, 2017 U.S. Dist. LEXIS 207932, 2017 WL 6507110, at *5 (internal citation and quotation marks omitted). "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Id.* (internal [*9] citation and quotation marks omitted). Not only has *Marciniak I* one not reached any final judgment or resolution but in *Marciniak II*, Plaintiffs' filed suit against two individual Defendants not previously included in *Marciniak I* – Freiwald and Azevedo to bring claims against them not previously brought. Considering Plaintiffs litigated *pro se* until November 9, 2023, Plaintiffs' motion to consolidate was denied in Marciniak I and the statute of limitations was approaching for the New York Adult Survivors Act ("ASA") claim, Plaintiffs filed Marciniak II to preserve certain claims. Despite any argued overlap between Plaintiffs' actions involving Title VII, the NYSHRL, the NYCHRL, Intentional Infliction of Emotional Distress ("IIED") and loss of consortium by Agra, this should not mandate dismissal of the instant action outright.

## II.    THIS COURT HAS PERSONAL JURISDICTION OVER MIT UNDER RULE 12(B)(2)

Contrary to MIT's assertions, this Court, given the specific circumstances of Marciniak's case, may assert both specific jurisdiction and general jurisdiction over the institution based on Marciniak's pleading. As MIT challenges whether this New York Court has personal jurisdiction over it pursuant to Rule 12(b)(2), Marciniak recognizes the well-established body of law as it pertains to nonforum universities and distinguishes her case from *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, therefore meeting her burden of a *prima facie* showing that personal jurisdiction exists over this Defendant.

"[I]n analyzing a Fed. R. Civ. P. 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute. Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011). There are two ways that New York exercises personal jurisdiction over non-residents: "general jurisdiction pursuant to N.Y. CPLR § 301 ... or specific jurisdiction pursuant to N.Y. CPLR § 302." *Id.* As at this early stage of litigation, "the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiffs, resolving any doubts in favor of jurisdiction." *See Dorchester Fin. Sec., Inc. v. Banco BRJ, SA.*, 722 F.3d 81, 85 (2d Cir. 2013). Plaintiff intends to persuade the Court that both the two categories of personal jurisdiction, general and specific, are present in this particular case. "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Gucci Am. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792.

### A. This Court Has General Jurisdiction Over MIT

In terms of general personal jurisdiction, as Marciniak acknowledges "a university or college cannot be deemed 'at home' in a forum merely because it engages in the sort of minimal and sporadic contact with the state that is common to all national universities" (*see Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)), she puts forth that the dynamic existing since 2013 between these NSF federally funded universities – MIT, RU and President and Fellow of Harvard's College ("Harvard") – is unique due to their cooperative agreement to collaborate with each other, share research and talent *i.e.* postdoc researchers to complete work they all benefit from pertaining specifically to the CBMM. CBMM is a research center initially

funded in 2013 through NSF's Science and Technology Centers Integrative Partnership program. It is based at MIT and headed by Tomaso Poggio, McDermott Professor in Brain Sciences at MIT. CBMM, like all the NSF centers, is a multi-institution collaboration. Of the 20 faculty members, known as Principal Investigators, affiliated with the center, 10 are from MIT, five are from Harvard and the rest being from Cornell University, RU, the University of California at Los Angeles, Stanford University and the Allen Institute for Brain Science.[5] The CBMM faculty member at RU is RU's tenure-track professor, Freiwald, Marciniak's sexual harasser and direct supervisor who she sufficiently alleged sex trafficked her after recruiting her to work in his laboratory in 2016. Compl. ¶¶ 40-80. Marciniak argues along with innovating, MIT, RU and Harvard are allowing a severe and pervasive mistreatment of female postdocs by male educators fueled by discriminatory animus resulting in Marciniak's rape and enduring of sexual harassment by her advisor, Freiwald, which they collectively disregarded after she lodge complaints directly to MIT detailing her allegations. Compl. ¶ 65. MIT's contact with New York was not minimal or what should be considered typical conduct for such a revered institution (or any entity ever) due to the physical and emotional harm the disregard and blatant conspiring MIT partook in to perpetuate an environment where this behavior occurred in the CBMM program, which its is a major part of MIT's actions, influence and employees have reached into New York by violating Marciniak's rights as a New York resident who traveled to Massachusetts on various occasions at the behest of her perpetrators to attempt to complete meaningful work in her field but was met with rapist, Azevedo and a misogynist culture degrading of women participating in the CBMM events. *Id*. ¶¶ 44-80.

Further, MIT together with Harvard were employing institutions of Marciniak's sexual assaulter and sexual harassment perpetrator, Azevedo against whom in March 2019 she filed a sexual assault and sexual harassment complaint with MIT in relation to the August 2017 rape at

---

[5] https://www.eurekalert.org/news-releases/466820

the CBMM Summer School.[6] Compl. ¶¶ 9, 10. As Marciniak pled in the Complaint, these institutions named in the caption share in a common business by operating the CBMM – "a multi-institutional research and education center *dedicated to the study of intelligence, how the brain produces intelligent behavior, and how this scientific discove1y may enable the replication of intelligence in machines."* (Id., ¶ 8). As of August 18, 2022, NSF awarded over 48 million tax-payers dollars to CBMM, and MIT is the main awardee, whereas Harvard, BCH, MBL, UChicago and RU are selected sub-awardee institutions of the NSF-CBMM cooperative agreement. (*Id.*). Marciniak's case is distinguishable from the many university personal jurisdiction cases where the Court denied general jurisdiction existed because the atypical contact MIT had with New York via the alleged conspiracy pled in the detailed Complaint in collaboration with the other involved institutions is sufficiently of a connection to haul the Massachusetts based MIT into Court in this state, especially considering one a New Yorker was raped at one of its programs. Comp. ¶¶ 44-70; see *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792. Therefore, for the reasons articulated above, the Court does have general jurisdiction over MIT.

### B.  This Court Does Have Specific Jurisdiction Over MIT

As the Court has discretion to find MIT "essentially at home"[7] in New York, it may also exercise specific jurisdiction over the university. As [s]pecific jurisdiction is jurisdiction "over issues that arise out of or relate to the entity's contacts with the forum." *Waraich*, 2022 WL 126014, at *2. Accurately related by Defendant, to establish specific jurisdiction over a defendant, "a plaintiff must demonstrate . . . that the defendant committed acts within the scope of New York's long-arm statute, CPLR § 302," *Bruin*, 2022 WL 992629, at *3, and that extending jurisdiction would comport with federal due process requirements.

---

[6] The CBMM Summer School program is financed from NSF-CBMM grant through Defendants MIT and Harvard.
[7] *Daimler AG v. Bauman*, 571 U.S. 117.

Section 302(a)(3) provides jurisdiction over a non-resident who commits a tortious act outside of the state but "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Bowman v. Winger*, 2015 U.S. Dist. LEXIS 39266. Plaintiff succeeds in establishing specific jurisdictional by meeting New York's long-arm statute's standard. MIT transacts business within New York as it contracts with New York based institutions *i.e.* RU to access its research and postdocs to further its own academic success and maintain funding and intentionally mishandled New York resident Marciniak's complaint of rape by Azevedo occurring at the CBMM program (constituting tortious behavior) in conspiring to conceal what occurred to salvage Azevedo's reputation, keep his work untainted and come out unscathed itself as a federally funded institution subject to Title XI requirements. Id. ¶¶ 65. In taking into account the foreseeability requirement of Section 302(a)(3), which "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." *Bowman*, at 4*. Marciniak argues it is foreseeable to expect that once a postdoc is raped at its CBMM program in Massachusetts by a TA, Azevedo who does research for MIT, will result in MIT expecting to answer for the tortious conduct in New York, where Marciniak has lived since 2016. Compl. ¶¶ 40-92. Despite MIT's attempt to downplay the single New York-related rape allegation and her resulting formal complaint as it relates to MIT's involvement, the articulable nexus exists given the entry of these institutions into the cooperative agreement as of 2013, its promotion of the collaborations between the faculty from various institutions in various states, the transport of the postdocs to attend events like the summer program organized through correspondence amongst MIT and RU faculty creates enough of a connection for MIT to

purposefully avail itself of the privileges of engaging in business in New York. *Id.* ¶¶ 40-92.

Extending jurisdiction over MIT would not violate federal due process requirements. As Plaintiffs sufficiently pled facts establishing the requisite minimum contacts "showing [MIT] purposefully directed [its] activities at the forum and the litigation resulted from alleged injuries that arise out of or relate to those activities." *Bustamante*, 2020 WL 583745, at *4. MIT indeed purposefully directed its activities at New York due to RU being an institution with facilities capable of conducting the sought after research as Freiwald's laboratory was located in New York, and RU was a participant in the cooperative agreement. MIT should have foreseen being sued in New York for the conduct of perpetrator Azevedo. *Id.* ¶¶ 40-92. Therefore, MIT is subject to personal jurisdiction under Rule 12(b)(2).

## III.   VENUE IS PROPER IN NEW YORK UNDER RULE 12(b)(3)

As found in *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, by laying venue in "a" -- not "the" -- judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, 28 U.S.C.S. § 1391(b)(2), Congress removed much of the ambiguity of the former statute. The United States Court of Appeals for the Second Circuit joins several other circuits in holding that the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts." (Id.) Pursuant to 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Marciniak has made a prima facie case based on the facts alleged in the Complaint that a substantial part of the events giving rise to her sexual assault, harassment, discrimination and

retaliation claims pertaining to MIT's involvement occurred in this district and the actions taken by MIT continued to have an effect on Marciniak after her return to New York, especially as Azevedo continued to reach out to Marciniak while in New York, and he visited her there at which time he perpetrated a second rape of Plaintiff. Compl. ¶¶ 44-92. Therefore, venue is proper in New York.

IV.   **THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT FOR DISCRIMINATION BASED ON GENDER AND SEXUAL HARASSMENT (COUNTS ONE TO THREE)**

MIT engaged in gender and sexual harassment-based discrimination in violation of Title VII (Count One), the NYSHRL (Count Two), and the NYCHRL (Count Three). Compl. ¶¶ 113-35. Marciniak's Title VII claims are sufficiently pled in the complaint as MIT was a joint employer sharing significant control over her employment[8] in conjunction with RU and Freiwald via the cooperative agreement, and the claims are timely under the Continuing violations doctrine's sound logic. "Generally, a court may consider, in addition to the original EEOC charges, those claims 'reasonably related' to the EEOC charges." *Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). A claim is considered "reasonably related" to the original claim in the EEOC complaint if: (1) the conduct complained of falls within the scope of the EEOC investigation of the original charge(s) of discrimination; (2) the claim alleges retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Burnham*, 1997 U.S. Dist. LEXIS 8177, *4-5, 1997 WL 317389, *2; *Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS),

---

[8] *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, 2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022); *see also Gonzalez v. City of New York*, 2015 WL 9450599, at *3 (E.D.N.Y. Dec. 22, 2015).

1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998).[9] In *Oshinsky v. New York City Hous. Auth.*, 2000 U.S. Dist. LEXIS 1879, under the continuing violation doctrine, the mandatory filing period is tolled until the last discriminatory act furthering a continuous discriminatory practice or policy, provided that the existence of a continuing violation is clearly asserted both in the EEOC filing and in the federal complaint. *Cohn v. New York City Dep't of Parks*, 1996 WL 449539, *3; *Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2 (S.D.N.Y. Nov. 13, 1991). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766.

"Courts will consider an entity a joint employer only when there is sufficient evidence that the entity had immediate control over the company's employees." *Toledo v. Unibud Restoration Corp.*, 2022 WL 171198, at *1 (S.D.N.Y. Jan. 19, 2022). Plaintiffs' claim survive because: (1) the joint employer doctrine qualifies MIT as Marciniak's employer; (2) the previous Charge of Discrimination[10] filed in *Marciniak I* gave Defendants notice of the Title VII claims with no prejudice existing making the claims are timely; and (3) Marciniak pled various adverse actions *i.e.* being denied a TA position, suffering the abrupt curtailing of her research which has reputational consequences and being terminated by RU in November 2021 after complaining of sex-based discrimination. As pointed out by MIT, for these Title VII claims, courts can consider MIT a joint employer only "when there is sufficient evidence that the entity had immediate control over the company's employees." *Toledo v. Unibud Restoration Corp.*, 2022 WL 171198, at *1 (S.D.N.Y. Jan. 19, 2022). The court will analyze "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records

---

[9]        This being especially true when a plaintiff was not represented by counsel at the time of filing said charge, as was the case here.
[10] See Declaration of Olivia M. Clancy, Exhibit A dated June 7, 2022.

of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.* The nature of the CBMM cooperative agreement strongly supports the existence of a joint employment relationship between RU and MIT specifically as they share employees to complete work on the same projects. Marcinik had no authority to refuse Freiwald's directive to complete work for CBMM and MIT while being employed by RU. These institutions are purposefully intertwined to share talent, research, funding and collaborating to facilitate important scientific breakthroughs. Further, to properly plead a Title VII or NYSHRL claim, Plaintiffs must allege that "(1) the employer discriminated against [Marciniak] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).[11] "[A]n employer discriminates against a plaintiff by taking an adverse employment action against him." *Id.* "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up). The elements of a *prima facie* case are "an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Yan v. Ziba Mode Inc.*, No. 09-CV-3000, 2016 U.S. Dist. LEXIS 42328, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016). Plaintiff makes her *prima facie* case by alleging that in a concerted effort to conceal the sexual assault, sex discrimination, misogynistic culture causing a hostile work environment for female postdocs and disparate treatment wherein professors favor the male researchers, constituting adverse actions and differential treatment based on her sex and the complaints she lodged against her male supervisors. As one of Plaintiffs' allegations is that these institutions not

---

[11] "Discrimination claims under the NYSHRL are largely subject to the same analysis we apply under Title VII." *Ochoa v. New York City Dep't of Educ.*, 2021 WL 5450343, at *3 (S.D.N.Y. Nov. 22, 2021); *see also Soloviev*, 104 F. Supp. 3d at 246 ("Because NYSHRL claims are subject to the same standard as Title VII claims, the Court will consider them together.").

only collaborate closely together but also collude just as closely resulting in her ultimate abrupt separation from employment (Compl. ¶¶ 65, 114), Plaintiffs put forth MIT indeed had a role in the illegal discriminatory and retaliatory decisions made negatively affecting Marciniak.

Significantly, MIT proffers a sworn affidavit by Glen Shor, MIT's Vice President and Treasurer[12] in support of its argument MIT lacks sufficient contacts with New York to be hauled into its courts but it does not provide the Court with a sworn affidavit by an MIT executive who is willing to testify that Azevedo was not an employee receiving any compensation from MIT in 2017 to the present or in any way definitely makes clear from MIT's point of view, what its relationship was and is with Azevedo. Plaintiff argues this lack of such an affidavit on such a relevant point which MIT has the internal records to determine the issue one way or the other supports the existence of an employer-employee relationship between MIT and Azevedo, however, it suits MIT's position to keep this relationship's status ambiguous. In sum, the Title VII, NYSHRL and NYCHRL claims should be permitted to proceed.

## V.   THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT FOR RETALIATION (COUNTS FOUR TO SIX)

Plaintiffs argue for the same reasons stated above pertaining to Counts One, Two and Three, Marciniak suffered retaliation at the hands of MIT in violation of Title VII (Count Four), the NYSHRL (Count Five) and the NYCHRL (Count Six). Compl. ¶¶ 136-55. Plaintiffs' claim should survive. As required by Title VII and the NYSHRL, Plaintiffs sufficiently pled she "(1) engaged in activity protected under Title VII . . . [and] the NYSHRL, (2) that the employer was aware of this activity, (3) that the employer took adverse actions against plaintiff, and (4) that a causal connect[ion] exists between the protected activity and the adverse action." *Ochoa,* 2021 WL 5450343, at *3. Similarly, for the NYCHRL, Plaintiffs must demonstrate that Marciniak "took an action opposing her employer's discrimination, and that, as a result, the employer engaged in

---

[12] *Marciniak II* Dkt. No. 44.

conduct that was reasonably likely to deter a person from engaging in such action." *Id*. at 4. Plaintiffs' retaliation claim supported by the CBMM summer program's denial of the TA position in 2020 not for reasons related to her qualifications or work product and awareness of her complain as of May 2019 is sufficient to state a claim as to MIT. (Compl. ¶¶ 65-69, 73, 74). *Kwan v. Andalex Grp*., LLC, 737 F.3d 834.

## VI.    THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT UNDER THE NEW YORK ADULT SURVIVORS ACT

In line with the spirit of the ASA, Marciniak relies upon the statute's one year window to revive her sexual assault claim against the individual Defendant Azevedo and its facilitation by Freiwald in violation of the New York Penal Code § 130. Compl. ¶¶ 158-160. *Johnson v. NYU Langone Health*, 2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023) ("For a claim to be *revived* pursuant to the ASA, a defendant's underlying conduct must constitute a sexual offense as defined in article one hundred thirty of the penal law."). For the above reasons, the ASA claim must survive to ensure Marciniak an opportunity for justice against the individual Defendants.

## VII.   THE COMPLAINT SUFFICIENTLY STATES A CLAIM AGAINST MIT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Marciniak's IIED claim should be permitted to continue against MIT. Marciniak relies upon the Continuing violations doctrine's logic as articulated above to address Defendants' argument Marciniak's allegations arising before November 22, 2022 are time-barred. Assuming the Court agrees with Marciniak's position the doctrine applies, she alleged MIT was involved in concealing her sexual assault by Azevedo, the purposeful failure to properly investigate her complaint and cause delay, retaliating against her, supporting Azevedo by maintaining its affiliation with him as well as Freiwald and further contributing to her any emotional distress which continues on to present day, well beyond November 2022. Under New York law, the torts of intentional and negligent infliction of emotional distress require a plaintiff to plead three elements: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and

the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). "[A] cause of action [for purely emotional harm] must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Id.* at 135 (citing *Jason v. Krey*, 60 A.D.3d 735, 875 N.Y.S.2d 194, 195 (2009)). Additionally, a plaintiff claiming intentional infliction of emotional distress must show "that the defendant intend[ed] to cause severe emotional distress." *Id.* (citations omitted). Marciniak argues as a joint employer, MIT owed and breached a duty to her endangering her physical and psychological safety. This egregious mishandling of her employment relationship despite it happening to span across various institutions meets the high bar for IIED claims. Therefore, the IIED claim should survive.

## VIII.   PLAINTIFFS' LOSS OF CONSORTIUM CLAIM IS WITHDRAWN

Plaintiffs withdraw the loss of consortium claim against MIT.

## IX.   ALTERNATIVELY, PLAINTIFFS REQUEST THE COURT STAY THE ACTION PENDING THE OUTCOME OF MARCINIAK I

District courts have broad authority to stay one action pending the outcome of another. *Kerotest Mfg.Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990). Courts in this district routinely issue stays when "awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009) (internal quotation marks omitted). In determining whether a stay is appropriate, the Court must consider whether the "interests of efficient judicial administration and comprehensive disposition of litigation" is better served through an order to stay the

proceedings. *New York v. Blank*, No. 88-CV-163, 1991 U.S. Dist. LEXIS 14582, 1991 WL 208883, at *11 (N.D.N.Y. Oct. 10, 1991). To guide this determination, courts generally consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Marciniak suffers not harm in the delay, neither do Defendants and the public has an interest as these top institutions who were alleged to have condoned a discriminatory and misogynist work environment employ many female researchers around the world. The Court should find that a stay of proceedings pending resolution of the underlying litigation in Marciniak I is the more efficient way to sequence resolution of these two, related actions, and may be necessary to avoid unnecessary determinations. Alternatively to dismissal of any of the claims, Plaintiffs request a stay of the proceeding pending the outcome of Marciniak I.

## CONCLUSION

For the reasons articulated above, Defendant MIT's motion to dismiss should be denied in its entirety or in the alternative, a stay of the proceedings.

Dated: February 26, 2024

Respectfully submitted,

SHEGERIAN & ASSOCIATES

By: */s/ Olivia M. Clancy*
Olivia M. Clancy, Esq.
90 Broad Street, Ste 804
New York, New York 10004
Telephone: (212) 257-8883
Email: oclancy@shegerianlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Olivia M. Clancy, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Massachusetts Institute of Technology's Motion to Dismiss the Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 26, 2024.

Dated: February 26, 2024                                    */s/ Olivia M. Clancy*