UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

DR. KAROLINA MARCINIAK-DOMINGUES GONCALVES AGRA, MR. PEDRO HENRIQUE MARCINIAK-DOMINGUES GONCALVES AGRA,

Plaintiffs,

-against-

MASSACHUSETTS INSTITUTE OF TECHNOLOGY, ROCKEFELLER UNIVERSITY, NATIONAL SCIENCE FOUNDATION (NSF) – CENTER FOR BRAINS MINDS AND MACHINES (CBMM) COOPERATIVE AGREEMENT, FREDERICO AZEVEDO, and WINRICH FREIWALD,

Defendants.

---------------------------------------------------------------- x

Case No. 1:23-cv-10305-JPC

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AZEVEDO'S MOTION TO DISMISS**

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ... 6

FACTUAL AND PROCEDURAL BACKGROUND ... 7

ARGUMENT ... 9

I. Pleading Standard ... 9

II. The Complaint Should Remain Intact, Or In The Alternative, *Marciniak II* Should Be Stayed ... 10

III. Marciniak's Title VII, NYSHRL and NYCHRL Claims Should Remain Intact ... 10

IV. The Discrimination Based on Gender and Sexual Harassment Claims Survive ... 13

V. The Retaliation Claims Survive ... 16

VI. Marciniak's CPLR 214-j Claim ... 16

VII. The Complaint Sufficiently States an IIED Claim ... 17

VIII. Plaintiffs Withdraw the Loss of Consortium Claim ... 19

CONCLUSION ... 19

# TABLE OF CONTENTS

**Cases** **Page(s)**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
215 F.R.D 87, 91 (S.D.N.Y. 2002)……………………………………………………..13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 4

*Burnham v. Board of Edu*., 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997)………………………………………………………16

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009)…………………………………………………14

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*,
893 F.2d 26, 29 (2d Cir. 1990)……………………………………………………………..14

Cornwell v. Robinson,
23 F. 3d 694, 704 (2d Cir. 1994)…………………………………………………...…17

*Curtis v. Citibank, N.A.*
226 F.3d 133……………………………………………………………………………..12

*EEOC v. Port Auth. of N.Y. & N.J.,*
768 F.3d 247, 254 (2d Cir 2014)……………………………………………………………14

*Ghosh v. New York City Dep't of Health*,
413 F. Supp. 2d 322………………………………………………………………………14,18

*Gonzalez v. City of New York*,
15-Cv-3158 (WFK) (CLP), 2015 WL 9450599 (E.D.N.Y. Dec. 22, 2015)…………………..14

*Harris v. New York City Department of Homeless Services*,
1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998)…………………………………………………………………………..15

*Jason v. Krey,*
60 A.D.3d 735, 875 N.Y.S.2d 194, 195 (2009)………………………………………………17

*Johnson v. NYU Langone Health*,
2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023)………………………………………..18

*Kerotest Mfg.Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952)…………………………………………………………....13

*Klinkowitz v. Jamaica Hosp. Med. Ctr.*,
2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022)……………………………………………14

*Kwan v. Andalex Grp*., LLC,
737 F.3d 834…………………………………………………………………………………16

*Mills v. Polar Molecular Corp*.,
12 F.3d 1170, 1174 (2d Cir. 1993)…………………………………………………………8

*New York v. Blank,*
No. 88-CV-163, 1991 U.S. Dist. LEXIS 14582, 1991 WL 208883, at *11
(N.D.N.Y. Oct. 10, 1991)……………………………………………………………………...12

*Ochoa v. New York City Dept. of Educ.*,
20-cv-9014 (ALC), 2021 WL 5450343 (S.D.N.Y. Nov. 22, 2021)....................................15,16

*Oshinksy v. New York City Hous. Auth*., 2000 U.S. Dist. LEXIS 1879…………………………..14

Pikulin v. City Univ. of New York,
176 F.3d 598, 599 (2d Cir. 1999)…………………………………………………………..16

*Quinn v. Green Tree Credit Corp*.,
159 F.3d at 766………………………………………………………………………………13

*Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.,*
702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010)…………………………………………………17

*Tesla Wall Syss., LLC v. Related Cos., L.P.,*
No. 17-cv-5966, 2017 U.S. Dist. LEXIS 207932, 2017 WL6507110, at *5
(S.D.N.Y. Dec. 18, 2017)…………..…………………………………………………………11

*Waldman v. Village of Kiryas Joel*,
207 F.3d 105, 110 (2d Cir. 2000)…………………………………………………………..10

*Volmar Distribs, Inc. v. N.Y. Post Co.,*
152 F.R.D. 36, 39 (S.D.N.Y. 1993)…………………………………………………………13

*Yan v. Ziba Mode Inc.,* No. 09-CV-3000, 2016 U.S. Dist. LEXIS 42328, 2016 WL 1276456, at *3
(S.D.N.Y. Mar. 29, 2016)…………………..………………………………………………..14

**Statutes**

Adult Survivors Act........................................................................................................ *passim*

New York State Human Rights Law .................................................................................. *passim*

New York City Human Rights Law .................................................................................. *passim*

**Other Authorities**

N.Y. CPLR § 214-j……………………………………………………………………11,14,15,16

Federal Rules of Civil Procedure Rule 12(b)(6)……………………………………………….5,8

Plaintiffs Dr. Karolina Marciniak-Domingues Goncalves Agra ("Marciniak") and Mr. Pedro Marciniak-Domingues Goncalves Agra (collectively herein "Plaintiffs") oppose Defendant Frederico Azevedo's ("Azevedo") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") seeking to dismiss all claims lodged against him in the Complaint (Dkt. 1) (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs bring suit against Defendants Rockefeller University ("RU"), Massachusetts Institute of Technology ("MIT"), National Science Foundation - Center For Brains Minds and Machines Cooperative Agreement ("CBMM"), Frederico Azevedo ("Azevedo") and Winrich Friewald ("Freiwald") for intentionally discriminating against Plaintiff Dr. Karolina Marciniak-Domingues Goncalves Agra ("Marciniak") based on her gender, fostering a hostile work environment, sexually harassing her, sexual assault, subjecting her to retaliation ultimately resulting in termination, abruptly ceasing her research, causing reputational damage, intentional infliction of emotional distress, loss of consortium and economic damages pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e, *et seq*. ("Title VII"), the New York State Executive Law ("NYSHRL") § 296, *et seq*., the New York City Admin. Code § 8-101, *et seq*. ("NYCHRL") and the N.Y. Civil Practice Laws and Rules ("CPLR") § 214-J via the New York Adult Survivors Act ("ASA") herein referred to as *Marciniak II*. For the reasons stated herein, Plaintiffs respectfully request this Court deny in its entirety Defendant Azevedo's 12(b)(6) motion to dismiss the cognizable claims Marciniak brought in this action.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

CBMM is a multi-institutional research and education center.[1] CBMM at MIT was established in 2013 under a cooperative agreement through funding via National Science Foundation ("NSF"). MIT is the *main* awardee, whereas President and Fellows of Harvard College ("Harvard"), Boston's Children's Hospital ("BCH"), Marine Biological Laboratory ("MBL"), University of Chicago ("UChicago") and RU are selected sub-awardee institutions of the NSF-CBMM agreement. Marciniak's claims arose between 2014 and 2022 when she was recruited to, subsequently worked for and trained at the CBMM as a junior postdoctoral researcher ("postdoc"). Compl. ¶ 75. RU and MIT jointly employed Marciniak from September 2016 to November 2021.[2] Harvard, together with MIT, were employing institutions of Marciniak's sexual assault perpetrator, Defendant Azevedo against whom in March 2019 she filed a complaint with MIT regarding the rape in August 2017 at CBMM's summer program.

Freiwald tried to recruit her by "intruding on her personal life without her consent," and "gravely misrepresented to her the state, maturity and capabilities of the laboratory facilities." Id. ¶¶ 37-39, 44. Marciniak also alleges that, under Freiwald's supervision, Freiwald "persistently invaded [her] personal space, touching her lower back inappropriately and looking at her legs and buttocks"; invited her to social events that made her feel "uncomfortable," "unwelcome," and "embarrass[ed]"; and had "demeanor and suggestive facial expressions [that] indicated a request for sexual favors in exchange for project progression." *Id.* ¶¶ 49, 54, 63, 75, 93-94. Further, Marciniak alleges that Freiwald acted improperly when he terminated her after she "expressed the need to set boundaries . . . [and] allud[ed] to Freiwald's past inappropriate actions as the reason for her discomfort," and filed a complaint against Freiwald and RU. *Id.* ¶¶ 96-98, 104-05. Marciniak

---

[1] CBMM is dedicated to the study of intelligence, how the brain produces intelligent behavior and how this scientific discovery may enable the replication of intelligence in machines.
[2] MIT maintained control over her employment, accessed her work progress and oversaw her research. Compl. ¶¶ 10, 26, 28.

alleged Freiwald as her direct supervisor assigned Plaintiff a CBMM project expressing excitement about the potential fit and the opportunity to work closely with a professor at MIT and alleged Freiwald had already contacted the professor at MIT about the offer. *Id.* ¶¶ 38,39. Further, she alleged Freiwald delegated her to travel to MIT to establish CBMM collaboration in September 2016. *Id.* ¶ 44. In August 2017, Plaintiff attended a CBMM course in Woods Hole, Massachusetts where she was assigned to reside in an off-campus cottage shared with Azevedo. where he sexually assaulted her for the initial time. He later mocked Plaintiff's emotions and coerced her silence by cornering her and insisting on her secrecy. *Id*. ¶¶ 47, 48, 51-53, 70, 87.[4] In September 2017, he "harassed [her] through daily calls and text messages" and "intimidated [her] to stay silent about the sexual assault incident," *id.* ¶¶ 51-52; between November 2017 and January 2018, he "coerced [her] into participating in three-some sexual encounters," *id.* ¶ 53; in March 2018, he "forcefully pushed [her] onto the bed, engaging in non-consensual intercourse without a condom," *id.* ¶ 56; in May and June 2018, he initiated unwanted conversations with her in Massachusetts and "added her to his self-made Whatsapp group of event organizers . . . [wherein] he repeatedly used Neo-Nazi and White Supremacist terms . . . [and] made derogatory comments about her Polish background," *id.* ¶¶ 58-60;[5] and in May 2019, he "harass[ed] and intimidat[ed]" her "through his physical gestures, voice and looks" during a conference in Massachusetts, *id.* ¶¶ 70-71.

In May and September of 2019, Marciniak filed the complaint about institutional processing of her initial complaint with the NSF Office of Diversity and Inclusion. On August 10, 2020, Marciniak filed a retaliation complaint with EEOC Boston against MIT, Harvard and BCH in relation to the events from February 2020 after denial of a Teaching Assistant ("TA") position by CBMM's summer program Directors. In May 2020, Marciniak opposed the ongoing sexual harassment from Freiwald, and on June 4, 2020, he demoted her in retaliation resulting in deportation. In May 2021, she filed a sexual harassment and retaliation complaint with the New

York State Division of Human Rights ("NYSDHR") against Freiwald and RU. In August 2021, Marciniak was terminated effective November 2021. In January 2022, the NYSDHR issued a probable cause determination. On June 7, 2022, Marciniak filed a Charge of Discrimination with the EEOC receiving a right to sue. *Id*. ¶6. On December 22, 2022, Plaintiffs commenced a lawsuit referenced herein as *Marciniak I*[3] against MIT, Harvard, RU and four other defendants: BCH, MBL, UChicago and NSF. In response to Defendants' pre-motion letters seeking to dismiss Plaintiffs' *Marciniak I* claims (*Marciniak I* Dkts. 15, 22, 24, 27, 32), Plaintiffs filed the Amended Complaint on April 10, 2023.[4] On April 20, 2023, Defendants filed a joint status report advising the court that they would move to dismiss. *Marciniak I* Dkt. 66. The court set a briefing schedule for Defendants' motions on November 6, 2023. *Marciniak I* Dkt. 68. Plaintiffs' counsel entered an appearance in *Marciniak I* on November 8, 2023. *Marciniak I* Dkt. 69. On November 22, 2023, Plaintiffs filed the instant action and Azevedo filed his motion to dismiss. Plaintiffs herein oppose Defendant Azevedo's arguments seeking dismissal of Marciniak's claims.

## ARGUMENT

### I. Pleading Standard

When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Noble v. Weinstein,* 335 F. Supp. 3d 504, 513 (S.D.N.Y. 2018) (citing *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1174 (2d Cir. 1993)). In order to survive a 12(b)(6) motion to dismiss, the complaint must sufficiently plead facts to "state a claim to relief that is plausible on its face." 335 F. Supp. 3d at 513 (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) [internal citations omitted]). A

[3] The lawsuit initially filed by Plaintiffs *pro se* was assigned Civil Case No. 1:22-cv-10959-ALC-SN currently before the Hon. Andrew L. Carter, Jr.

[4] *Marciniak I* Dkt. 75.

claim's facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Canosa v. Ziff*, No. 18-cv-4115, 2019 WL 498865, at *5 (S.D.N.Y. Jan. 28, 2019) (citing *Iqbal*, 556 U.S. at 663 [internal citations omitted]).

For the reasons discussed below, Marciniak states plausible claims that they are entitled to relief, and dismissal of her Complaint therefore should be denied.

### II. The Complaint Should Remain Intact, Or In The Alternative, *Marciniak II* Should Be Stayed

The Complaint in *Marciniak II* should remain intact despite the ongoing litigation of *Marciniak I* wherein not all the parties or claims brought by Plaintiffs are identical.

Second Circuit precedent in *Curtis v. Citibank, N.A.*, 226 F.3d 133 more so supports Plaintiffs' position than Defendants, especially pertaining to Plaintiffs' request to stay this matter pending the outcome of the motions to dismiss before Judge Carter in *Marciniak I*. In *Curtis*, the Court's outcome was ultimately that "as part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit[.]" recognizing "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." The facts and procedural scenario contemplated by the Court in *Curtis* differs from this case as well. In *Curits*, the Court soundly reasoned, it "must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same. Here they are not entirely duplicative. Thus, dismissal in whole was inappropriate." See *Curtis v. Citibank, N.A.*, 226 F.3d 133.

Although Defendant do not explicitly rely upon the doctrine of claim splitting specifically, Plaintiffs take the opportunity to argue that it does not apply. The doctrine of claim splitting does not apply as *Marciniak I* filed before the instant action of *Marciniak II* has not generated a final judgment or resolution and is in early stages of litigation as the parties await a decision on defendants' motions to dismiss. Under the doctrine of claim splitting, "a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing, *inter alia, Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)); *see also Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-cv-5966, 2017 U.S. Dist. LEXIS 207932, 2017 WL 6507110, at *5 (S.D.N.Y. Dec. 18, 2017) ("Claim-splitting is generally prohibited by the doctrine of res judicata, which bars parties to a prior action or those in privity with them from raising in a subsequent proceeding any claim that they *could* have raised in the prior one, where all of the claims arise from the same set of operative facts." (internal citation and quotation marks omitted) (emphasis in original)). "To decide if a later-filed suit is duplicative, courts examine whether the two proceedings involve the same (1) parties or their privies and (2) transactions or series of transactions." *Tesla Wall Sys.*, 2017 U.S. Dist. LEXIS 207932, 2017 WL 6507110, at *5 (internal citation and quotation marks omitted). "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Id.* (internal citation and quotation marks omitted).

Not only has *Marciniak I* one not reached any final judgment or resolution but in *Marciniak II*, Plaintiffs' filed suit against two individual Defendants not previously included in *Marciniak I* – Freiwald and Azevedo to bring claims against them not previously brought. Considering Plaintiffs litigated *pro se* until November 9, 2023, Plaintiffs' motion to consolidate

was denied in *Marciniak I* and the statute of limitations to bring a sexual assault claim against Azevedo individually was approaching permitted via the CPLR § 214-j claim permissible under the ASA, Plaintiffs filed *Marciniak II* to in an effort to preserve Marciniak's rights. It remains unknown whether *Marciniak I* will remain in litigation given the pending motions to dismiss. Despite any argued overlap between Plaintiffs' actions involving Title VII, the NYSHRL, the NYCHRL, Intentional Infliction of Emotional Distress ("IIED") and loss of consortium by Agra, this should not mandate dismissal of the instant action here outright.

In the event the Court does not decide to deny Azevedo's motion to dismiss in its entirety, Marciniak requests that in the alternative to dismissal of any of her claims, the Court grant a stay of *Marciniak II* pending the Court's decision on the Defendants' Joint Consolidated and individual Motions to Dismiss, which are fully submitted in *Marciniak I*. District courts have broad authority to stay one action pending the outcome of another. *Kerotest Mfg.Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990). Courts in this district routinely issue stays when "awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009) (internal quotation marks omitted). In determining whether a stay is appropriate, the Court must consider whether the "interests of efficient judicial administration and comprehensive disposition of litigation" is better served through an order to stay the proceedings. *New York v. Blank*, No. 88-CV-163, 1991 U.S. Dist. LEXIS 14582, 1991 WL 208883, at *11 (N.D.N.Y. Oct. 10, 1991). To guide this determination, courts generally consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants;

(3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Marciniak suffers not harm in the delay, neither do Defendants and the public has an interest as these top institutions who were alleged to have condoned a discriminatory and misogynist work environment employ many female researchers around the world. The Court should find that a stay of proceedings pending resolution of the underlying litigation in *Marciniak I* is the more efficient way to sequence resolution of these two, related actions, and may be necessary to avoid unnecessary determinations. Alternatively to dismissal of any of the claims, Plaintiffs request a stay of the proceeding pending the outcome of *Marciniak I*.

Accordingly, the Complaint in *Marciniak II* should remain intact, or in the alternative, *Marciniak II* should be stayed.

**III. Marciniak's Title VII, NYSHRL and NYCHRL Claims Should Remain Intact**

Marciniak relies upon the application of equitable tolling to maintain her Title VII, NYSHRL and NYCHL claims as her original EEOC Charge of Discrimination filed on June 7, 2022 was timely. See *Ghosh v. New York City Dep't of Health*, 413 F. Supp. 2d 322.

**IV. The Discrimination Based on Gender and Sexual Harassment Claims Survive**

Defendant engaged in gender and sexual harassment-based discrimination in violation of Title VII, the NYSHRL and the NYCHRL. Compl. ¶¶ 113-35. Assuming the Court applies the concept of equitable tolling enunciated in *Ghosh*, Marciniak's Title VII claims are sufficiently pled in the Complaint as Defendant acted as her employer in a position of authority over her sharing significant control over her employment[5] in conjunction with the other Defendants via a cooperative agreement existing in the interests of sharing research amongst the involved institutions, and further these claims are related and timely under the Continuing violations

[5] *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, 2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022); *see also Gonzalez v. City of New York*, 2015 WL 9450599, at *3 (E.D.N.Y. Dec. 22, 2015).

doctrine. “Generally, a court may consider, in addition to the original EEOC charges, those claims 'reasonably related' to the EEOC charges." *Burnham v. Board of Edu*., 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). A claim is considered "reasonably related" to the original claim in the EEOC complaint if: (1) the conduct complained of falls within the scope of the EEOC investigation of the original charge(s) of discrimination; (2) the claim alleges retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Burnham*, 1997 U.S. Dist. LEXIS 8177, *4-5, 1997 WL 317389, *2; *Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998).[6] In *Oshinksy v. New York City Hous. Auth*., 2000 U.S. Dist. LEXIS 1879, under the continuing violation doctrine, the mandatory filing period is tolled until the last discriminatory act furthering a continuous discriminatory practice or policy, provided that the existence of a continuing violation is clearly asserted both in the EEOC filing and in the federal complaint. *Cohn v. New York City Dep’t of Parks*, 1996 WL 449539, *3; *Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2 (S.D.N.Y. Nov. 13, 1991). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.” *Quinn v. Green Tree Credit Corp*., 159 F.3d at 766.

Plaintiffs’ claim survive because: (1) Defendant qualifies as Marciniak’s employer; (2) the previous Charge of Discrimination filed in *Marciniak I* gave Defendants notice of the Title VII claims (along with the NYSHRL and NYCHRL claims with no prejudice existing making the

[6] This being especially true when a plaintiff was not represented by counsel at the time of filing said charge, as was the case here.

claims are timely; and (3) Marciniak pled various adverse actions *i.e.* being denied a TA position, suffering the abrupt curtailing of her research which has reputational consequences and being terminated by RU in November 2021 after complaining of sex-based discrimination. In further support of Freiwald's role and facilitation of Azevedo's sexual assault of Marciniak in violation of § 130 of the New York Penal Code and CPLR 214-j, Marcinik had no authority to refuse Freiwald's directive to complete work for CBMM, MIT or RU while being her direct supervisor as these institutions are purposefully intertwined to share talent, research, funding and collaborating to facilitate important scientific breakthroughs. Further, to properly plead a Title VII or NYSHRL claim, Plaintiffs must allege that "(1) the employer discriminated against [Marciniak] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).[7] "[A]n employer discriminates against a plaintiff by taking an adverse employment action against him." *Id.* "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up). The elements of a *prima facie* case are "an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Yan v. Ziba Mode Inc.*, No. 09-CV-3000, 2016 U.S. Dist. LEXIS 42328, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016). Plaintiff makes her *prima facie* case by alleging that in a concerted effort to conceal the sexual assault, sex discrimination, misogynistic culture causing a hostile work environment for female postdocs and disparate treatment wherein professors favor the male researchers, constituting adverse actions and differential treatment based on her sex and the complaints she

[7] "Discrimination claims under the NYSHRL are largely subject to the same analysis we apply under Title VII." *Ochoa v. New York City Dep't of Educ.*, 2021 WL 5450343, at *3 (S.D.N.Y. Nov. 22, 2021); *see also Soloviev*, 104 F. Supp. 3d at 246 ("Because NYSHRL claims are subject to the same standard as Title VII claims, the Court will consider them together.").

lodged against her male supervisors. As one of Plaintiffs' allegations is that these institutions not only collaborate closely together but also collude just as closely resulting in her ultimate abrupt separation from employment (Compl. ¶¶ 65, 114), Plaintiffs put forth Azevedo indeed had a role in the illegal discriminatory and retaliatory decisions made negatively affecting Marciniak.

In sum, the Title VII, NYSHRL and NYCHRL claims should be permitted to proceed.

**V. The Retaliation Claims Survive**

Plaintiffs argue for the same reasons stated above, and relying on the equitable tolling doctrine, Marciniak suffered retaliation at the hands of Defendant in violation of Title VII, the NYSHRL and the NYCHRL, which claims should survive dismissal. Compl. ¶¶ 136-55. As required by Title VII and the NYSHRL, Plaintiffs sufficiently pled she "(1) engaged in activity protected under Title VII . . . [and] the NYSHRL, (2) that the employer was aware of this activity, (3) that the employer took adverse actions against plaintiff, and (4) that a causal connect[ion] exists between the protected activity and the adverse action." *Ochoa,* 2021 WL 5450343, at *3. Similarly, for the NYCHRL, Plaintiffs must demonstrate that Marciniak "took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id*. at 4. Plaintiffs' retaliation claim supported by the CBMM summer program's denial of the TA position in 2020 not for reasons related to her qualifications or work product and awareness of her complaint as of May 2019 is sufficient to state a claim as to MIT. (Compl. ¶¶ 65-69, 73, 74). *Kwan v. Andalex Grp*., LLC, 737 F.3d 834.

**VI. Marciniak's N.Y. CPLR 214-j Claim**

In line with the spirit of the ASA, Marciniak relies upon the statute's one year window closing November 24, 2023 to revive her sexual assault claim against the individual Defendant Azevedo and its facilitation by Freiwald despite her complaint to him in September 2017 of

Azevedo's inappropriate conduct (see Compl. ¶¶ 49, 50, 87) in violation of the New York Penal Code § 130 and CPLR § 214-j. Compl. ¶¶ 158-160. *Johnson v. NYU Langone Health*, 2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023) ("For a claim to be *revived* pursuant to the ASA, a defendant's underlying conduct must constitute a sexual offense as defined in article one hundred thirty of the penal law."). Marciniak argues her claims against the individual Defendants Azevedo and Freiwald in violation of Section 130 of the New York Penal Code and CPLR § 214-j survive based on the specific facts pled in the Complaint detailing the type of illegal conduct the Defendants committed, which the afore-referenced statues were written to prevent. This logic is in line with the requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 as the Court does "not require [a] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." The Court here has enough to nudge Marciniak's claims across the lines from conceivable to plausible and that's all that is required to survive a motion to dismiss. For the above reasons, the claims permitted via the ASA survive to allow Marciniak an opportunity for justice against the individual Defendants.

**VII. The Complaint Sufficiently States an IIED Claim**

Marciniak's IIED claim should be permitted to continue against Azevedo. As previously argued under point heading III. of Plaintiffs' memorandum of law in opposition, Marciniak relies upon the application of equitable tolling as her original EEOC Charge of Discrimination filed on June 7, 2022 was timely. See *Ghosh v. New York City Dep't of Health*, 413 F. Supp. 2d 322. This Court has reasoned that "[t]he application of equitable tolling…does not…revive those claims that were not filed in a timely manner with the EEOC. In order to be timely filed, charges of discrimination must be filed with the EEOC within 300 days of the alleged discrimination. *See Pikulin v. City Univ. of New York,* 176 F.3d 598, 599 (2d Cir. 1999) ("An

employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency.")”. If the Court were to agree this logic applies to the case at bar, it would recognize Plaintiffs’ claims are originally timely within the 300-day time period required by the EEOC based on the date of her termination effective on November 30, 2021. Compl. ¶ 105. Marciniak alleged Defendants conspired after her complaints were lodged to conceal her sexual assault by Azevedo, the purposeful failure to properly investigate her complaint and cause delay, retaliating against her, supporting Azevedo by maintaining its affiliation with him as well as Freiwald further contributing to her any emotional distress, which continues on to present day, well beyond November 2022.[8]

Under New York law, the torts of intentional and negligent infliction of emotional distress require a plaintiff to plead three elements: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). "[A] cause of action [for purely emotional harm] must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Id.* at 135 (citing *Jason v. Krey*, 60 A.D.3d 735, 875 N.Y.S.2d 194, 195 (2009)). Additionally, a plaintiff claiming intentional infliction of emotional distress must show "that the defendant intend[ed] to cause severe emotional distress." *Id.* (citations omitted). Marciniak argues as her employers, Defendants owed and breached a duty to her endangering her physical and psychological safety specifically when facilitating her travel to participate in the CBMM summer

[8] Additionally, as this case warrants its application, the "continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994).

programs in 2017 and 2018. Additionally, her reputation sustained tarnish while at the program in Wood Hole as she pled in the Complaint colleagues gossiped after she brought Agra in 2018. Compl. ¶ 61. This egregious mishandling of her employment relationship despite it happening to span across various institutions meets the high bar for IIED claims.

Therefore, the IIED claim should survive based primarily on equitable tolling.

### VIII. Plaintiffs withdraw the Loss of Consortium Claim

Plaintiffs withdraw their loss of consortium claim. Therefore, Plaintiffs' Ninth Cause of Action must be dismissed.

## CONCLUSION

Based on the foregoing, Plaintiff Marciniak respectfully requests that the Court deny Defendant Azevedo's motion to dismiss the Complaint in its entirety together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 22, 2024

SHEGERIAN & ASSOCIATES

By: */s/ Olivia M. Clancy*
Olivia M. Clancy, Esq.
90 Broad Street, Ste. 804
New York, New York 10004
oclancy@shegerianlaw.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Olivia M. Clancy, hereby certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 22, 2024.

Dated: April 22, 2024 *<u>/s/ Olivia M. Clancy</u>*